IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| JOANN BLACKMON, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CIVIL ACTION NO. 2:04CV657-SRW |
| ) | (WO) |
| JO ANNE B. BARNHART, Commissioner ) | |
| of Social Security, ) | |
| ) | |
| Defendant. ) | |

**MEMORANDUM OF OPINION**

Plaintiff Joann Blackmon brings this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) seeking judicial review of a decision by the Commissioner of Social Security ("Commissioner") denying her application for Supplemental Security Income and disability insurance benefits under the Social Security Act. The parties have consented to entry of final judgment by the Magistrate Judge, pursuant to 28 U.S.C. § 636(c). Upon review of the record and briefs submitted by the parties, the court concludes that the decision of the Commissioner is due to be affirmed.

**BACKGROUND**

On May 30, 2000, plaintiff filed an application for disability insurance benefits and, on July 29, 2000, for Supplemental Security Income. On August 1, 2002, after the claim was denied at the initial administrative levels, an ALJ conducted an administrative hearing. The ALJ rendered a decision on September 11, 2002. The ALJ concluded that plaintiff suffered from the severe impairments of "cervical radiculopathy, degenerative joint disease, asthma,

cervical degenerative disc disease, right impingement syndrome, lateral epicondylitis right elbow, arthralgias, hypertension, tear medial collateral ligament right knee – status post arthroscopy, fibromyalgia, obesity, osteoarthritis, paresthesias, lumbalgia, sleep apnea, depressive disorder, personality disorder, alcohol abuse, fibroid tumor, and status post congestive heart failure." (R. 31). He found that plaintiff's impairments, considered in combination, did not meet or equal the severity of any of the impairments in the "listings" and, further, that plaintiff retained the residual functional capacity to perform jobs existing in significant numbers in the national economy. Thus, the ALJ concluded that the plaintiff had not been disabled within the meaning of the Social Security Act since the alleged onset date. On May 6, 2004, the Appeals Council denied plaintiff's request for review and, accordingly, the decision of the ALJ became the final decision of the Commissioner.

## STANDARD OF REVIEW

The court's review of the Commissioner's decision is narrowly circumscribed. The court does not reweigh the evidence or substitute its judgment for that of the Commissioner. Rather, the court examines the administrative decision and scrutinizes the record as a whole to determine whether substantial evidence supports the ALJ's factual findings. Davis v. Shalala, 985 F.2d 528, 531 (11th Cir. 1993); Cornelius v. Sullivan, 936 F.2d 1143, 1145 (11th Cir. 1991). Substantial evidence consists of such "relevant evidence as a reasonable person would accept as adequate to support a conclusion." Cornelius, 936 F.2d at 1145. Factual findings that are supported by substantial evidence must be upheld by the court. The ALJ's legal conclusions, however, are reviewed *de novo* because no presumption of validity

attaches to the ALJ's determination of the proper legal standards to be applied. Davis, 985 F.2d at 531. If the court finds an error in the ALJ's application of the law, or if the ALJ fails to provide the court with sufficient reasoning for determining that the proper legal analysis has been conducted, the ALJ's decision must be reversed. Cornelius, 936 F.2d at 1145-46.

## DISCUSSION

The plaintiff challenges the Commissioner's decision, arguing that: (1) the ALJ failed to consider the combination of plaintiff's impairments; (2) the ALJ failed to assess the plaintiff's credibility properly; (3) the ALJ failed to assess plaintiff's residual functional capacity properly; (4) the ALJ incorrectly determined that alcoholism was a contributing factor material to the finding of disability; and (5) the Appeals Council erred by denying review despite new and material evidence.

### Assessment of Plaintiff's Credibility

Plaintiff argues that the Commissioner failed to assess the plaintiff's credibility properly. (Plaintiff's brief, pp. 10-11). In the Eleventh Circuit, a claimant's assertion of disability through testimony of pain or other subjective symptoms is evaluated pursuant to a three-part standard. "The pain standard requires '(1) evidence of an underlying medical condition and either (2) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (3) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain.'" Dyer v. Barnhart, 395 F.3d 1206, 1210 (11th Cir. 2005)(quoting Holt v. Sullivan, 921 F.2d 1221, 1223 (11th Cir. 1991)). "The standard also applies to complaints of subjective conditions

other than pain." Holt, *supra*, 921 F.2d at 1223. If this standard is met, the ALJ must consider the testimony regarding the claimant's subjective symptoms. Marbury v. Sullivan, 957 F.2d 837, 839 (11th Cir. 1992). After considering the testimony, the ALJ may reject the claimant's subjective complaints. However, if the testimony is critical, the ALJ must articulate specific reasons for rejecting the testimony. Id. The reasons articulated by the ALJ must be "explicit, adequate, and supported by substantial evidence in the record." Preston v. Barnhart, 2006 WL 1785312, *1 (11th Cir. Jun. 29, 2006)(unpublished opinion)(citing Hale v. Bowen, 831 F.2d 1007, 1011-12 (11th Cir. 1987)). "A claimant's subjective testimony supported by medical evidence that satisfies the pain standard is itself sufficient to support a finding of disability." Foote v. Chater, 67 F.3d 1553, 1560 (11th Cir. 1995).[1] "The credibility determination does not need to cite ""'particular phrases or formulations'" but it cannot merely be a broad rejection which is '"not enough to enable [the court] to conclude that [the ALJ] considered [the claimant's] medical condition as a whole."'" Dyer, *supra*, 395 F.3d at 1210 (citations omitted).

Plaintiff first argues that the ALJ makes no reference either to the Eleventh Circuit

---

[1] See also Social Security Ruling 96-7p, 61 Fed. Reg. 34483-01 (July 2, 1996):

When evaluating the credibility of an individual's statements, the adjudicator must consider the entire case record and give specific reasons for the weight given to the individual's statements. The finding on the credibility of the individual's statements cannot be based on an intangible or intuitive notion about an individual's credibility. The reasons for the credibility finding must be grounded in the evidence and articulated in the determination or decision. It is not sufficient to make a conclusory statement that "the individual's allegations have been considered" or that "the allegations are (or are not) credible." It is also not enough for the adjudicator simply to recite the factors that are described in the regulations for evaluating symptoms. The determination or decision must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight.

pain standard or to SSR 96-7p. Plaintiff is incorrect. The ALJ specifically referenced both SSR 96-7p and the Eleventh Circuit pain standard. (R. 33).

Plaintiff further argues that the ALJ did not sufficiently articulate his grounds for rejecting plaintiff's testimony of pain and other symptoms. However, the ALJ listed a number of reasons for discounting plaintiff's testimony of pain and other symptomology. (R. 33-34). At the hearing, plaintiff testified that she has pain in her feet, leg knee, hip, bottom, shoulder, neck, back and hand. She testified that her pain began in 1995 when she fell and fractured her left elbow, that her shoulder began hurting in 1998, and that about a month later, the pain started in her neck and down her back. (R. 656-57). Plaintiff described her pain as a "throbbing" ache in her feet; a "sharp pain" in her leg, knees, neck, shoulder, upper back and side; "sharp and dull mixed" in her lower back; and a "burning" pain in her elbow. (R. 658-59). Plaintiff testified that she experiences pain at a level of ten on a scale of ten every day, that she was experiencing pain at that level as she was testifying, that the pain lasts for ten or twenty seconds sometimes, 10 to 15 minutes at others, and for up to an hour, and that she experiences pain "all the time." (R. 659-60). She further testified that her pain is aggravated by "sweeping, mopping, cooking, hanging out clothes, driving, bending over, stooping, taking out the trash," and that "just anything that I do bring on the pain." (R. 660). She takes medication and prays, but the pain does not ease. (Id.). Plaintiff testified that her medications cause nausea, drowsiness and dry mouth, and that she "spit[s] a lot." (R. 660-61).

The ALJ correctly noted that the medical records, such as office treatment notes, do

not corroborate plaintiff's allegations of side effects of nausea, drowsiness and dry mouth. (R. 34). Plaintiff does not direct the court to evidence of any instance on which the plaintiff complained to a medical provider about side effects of nausea, drowsiness or dry mouth, and the court has found none.

The ALJ stated that "[t]he physical findings in the record do not establish the existence of neurological deficits, significant weight loss, muscle atrophy, or other observable signs often indicative of protracted pain of the intensity, frequency and severity alleged." (Id.). He further noted plaintiff's failure to follow up on her physician's recommendations for physical therapy. (Id., see also R. 274 (plaintiff discharged from PT because she "missed last scheduled appointment and was unable to be contacted to reschedule")). The ALJ noted, *inter alia*, plaintiff's admission to Dr. Babb in October 2000 that she drove a car and was completely independent in lifestyle and activity and Dr. Babb's observation that the plaintiff ambulated "completely independently and was in no distress," (R. 34; see also R. 344); plaintiff's statement to Dr. Golomb in October 2001 that she had a boyfriend and spent a considerable amount of time with him (R. 34; see also R. 375); plaintiff's May 2002 report to Dr. Hammack that she gets up by 7 a.m., gets her kids off to school, may do a little housework, watches TV and prepares the evening meal, and that she "has a number of friends that she likes to go out with and do things with," she "likes to party and states that she has a boyfriend." (R. 34; see also R. 430-33). The ALJ also noted plaintiff's hearing testimony that she regularly performs household chores including mopping, sweeping, dusting, washing clothes, and cooking. (R. 34, 666). He also observed

6

that plaintiff testified that she straightens the house and takes out the trash, attends church at times, goes to visit others, helps her children with their homework, and watches television. (R. 34; 665-67). The ALJ further noted that the plaintiff testified that she was experiencing pain at a level of "ten" as she was testifying, but was very descriptive, animated, and talkative, and exhibited no signs of being in any pain or distress. (R. 35).

The ALJ clearly articulated sufficient reasons for discounting plaintiff's testimony of pain and other subjective symptoms, and those reasons are supported by substantial evidence. Plaintiff's argument that the ALJ failed to assess her credibility properly is without merit.

### Combination of Impairments

"Where a claimant has alleged several impairments, the [Commissioner] has a duty to consider the impairments in combination and to determine whether the combined impairments render the claimant disabled." Jones v. Dept. of Health and Human Services, 941 F.2d 1529, 1533 (11th Cir. 1991). Plaintiff contends that the Commissioner erred by failing to consider the combination of plaintiff's impairments properly. Plaintiff also argues that the ALJ failed to consider the effects of chronic severe pain and plaintiff's affective disorder properly.

As noted above, the ALJ appropriately discounted plaintiff's complaints of pain, finding that she suffers from a "moderate" degree of pain. (R. 37-38, Finding No. 6).[2] Plaintiff does not cite to any medical evidence of record regarding a diagnosis of "affective disorder," or of the functional limitations caused by any such disorder. (See Plaintiff's brief,

---

[2] Plaintiff argues, incorrectly, that "[t]he ALJ made no finding concerning the level of pain experienced by Plaintiff." (Plaintiff's brief, p. 3).

7

p. 11).  The court notes that plaintiff was diagnosed in December 2001 by a physician at the Montgomery Area Mental Health Authority with "Depressive Disorder NOS" and "Alcohol Abuse."  (R. 404).  Dr. Hammack, the consultative psychologist, diagnosed "Depressive Disorder, NOS," and "Personality Disorder, NOS."   (R. 433).   Dr. Hammack completed a RFC form setting forth plaintiff's mental limitations (R. 434-35), and the ALJ incorporated these limitations in his findings regarding plaintiff's residual functional capacity (R. 338, Finding No. 6), and in his hypothetical question to the vocational expert, who testified at the hearing (R. 683).

In Wilson v. Barnhart, 284 F.3d 1219, 1244 (11th Cir. 2002), the Eleventh Circuit held that an ALJ's statement that "'the medical evidence establishes that [Wilson] had [several injuries] which constitute a 'severe impairment,' but that he did not have an impairment *or combination of impairments* listed in, or medically equal to one listed in Appendix 1, Subpart P, Regulations No. 4'" was "evidence that he considered the combined effects of Wilson's impairments." (alterations and emphasis in original).  The Eleventh Circuit rejected the District Court's determination that the ALJ had failed to discuss the cumulative effects of the plaintiff's impairments.  In the present case, the ALJ likewise found that the plaintiff's impairments, "considered individually and in combination, do not meet or equal in severity any impairment set forth at 20 C.F.R. Part 404, Subpart P, Appendix 1." (R. 37, Finding No. 4).  This statement constitutes evidence that the ALJ considered plaintiff's impairments in combination and, thus, plaintiff's argument to the contrary is without merit.

Assessment of Plaintiff's Residual Functional Capacity

Plaintiff argues that the ALJ failed to assess her residual functional capacity properly because: (1) he adopted a state agency medical consultant's findings dated December 12, 2000 which failed to take into account more than two years of additional medical documentation; and (2) he did not properly do a function-by-function assessment based upon the record. (Plaintiff's brief, p. 10). However, it is clear from the ALJ's decision that he considered all of the medical evidence of record, including evidence dated after December 2000. (See R. 27-29)(summarizing medical records). While the ALJ stated that his findings were in "substantial agreement" with those of the state medical consultants, he further stated:

> Although the State Agency medical consultants did not examine the claimant, they provided specific reasons for their opinions indicating that these opinions were grounded in the evidence of record. *I find that the evidence received into the record after the reconsideration determination did not provide any new or material information that would significantly alter findings about the claimant's functional limitations. To the degree that the conclusions of the State Agency medical consultants differ from those of the undersigned, their reports are accorded little weight, as the opinions were based on only part of the current evidence of record.*

(R. 32)(emphasis added). The ALJ further noted that he gave "great weight" to the medical source opinion (physical) rendered by Dr. Golomb, the consultative examiner, on October 2, 2001 and the medical source opinion (mental) provided by Dr. Hammack, the consultative psychologist. (R. 32-33). The ALJ made detailed "function-by-function" findings and accurately noted that "[t]he record does not contain any opinions from treating or examining physicians indicating that the claimant is disabled or even has limitations greater than those determined in this decision." (R. 35-36). The plaintiff's argument that the ALJ failed to

properly assess her residual functional capacity is likewise without merit.

<u>Alcoholism as a Contributing Factor</u>

Plaintiff argues that "[t]he administrative law Judge incorrectly determined that alcoholism was a contributing factor material to the finding of disability." (Plaintiff's brief, p. 4). However, the ALJ made no "findings" relating to plaintiff's alcoholism. (<u>See</u> R. 37-38, Findings No. 1-13). In the text of his decision, after setting forth his conclusion that plaintiff has not been disabled within the meaning of the Social Security Act since the alleged onset date, the ALJ stated:

> Finally, even if I were to have found that the claimant is currently unable to perform work related activities on a sustained basis, it is clear that any such disability arises from and is caused by her alcohol abuse. It is plain on this record that, if the claimant were truly to cease all use of alcohol, she would not in any sense be disabled. Th[u]s, her abuse of alcohol would necessarily be material to any find of disability. *Accordingly, even if I had found the claimant disabled, she would not be entitled to benefits.*

(R. 37)(emphasis added). However, the ALJ did *not* find the claimant disabled, and his observation regarding her alcohol abuse did not form the basis for his conclusion that she is not disabled. The Commissioner argues, "[t]he ALJ's comment at the end of his decision noting that even *if a hypothetical* alternate finding had been reached, Plaintiff would not be entitled to benefits due to her alcohol abuse, in no way affects the ALJ's proper analysis and findings." (Defendant's brief, p. 5)(emphasis in original). The court agrees. Further discussion regarding whether the ALJ's analysis would have been proper – had he, in fact, made the finding that plaintiff is disabled – is unnecessary.

<u>New Evidence</u>

10

Plaintiff appeals the Appeals Council's decision denying review. Thus, the court must review the record as it was before the Appeals Council, which included the newly submitted records.  See Fry v. Massanari, 209 F.Supp.2d 1246, 1252 (N.D. Ala. 2001) (citing, *inter alia*, Falge v. Apfel, 150 F.3d 1320, 1324 (11th Cir.1998) (Where the claimant specifically challenges the decision of the Appeals Council to deny review, the record for the district court's consideration will include any new evidence submitted by the claimant after the ALJ's hearing and decision.). "When a district court is hearing such a challenge, its duty . . . is a three-fold inquiry. It must find whether the claimant has proven 'that (1) there is new, non-cumulative evidence, (2) the evidence is "material," that is, relevant and probative so that there is a reasonable probability that it would change the administrative result, and (3) that there is good cause for the failure to submit the evidence at the administrative level.'" Fry, 209 F.Supp.2d at 1252 (citing Keeton v. Department of Health and Human Services, 21 F.3d 1064, 1067-1068 (11th Cir.1994)).

The new evidence submitted by plaintiff to the Appeals Council consists of (1) billing records for the period from August 1999 to March 2003 from Dr. Burton of Alabama Orthopaedic Specialists (R. 604-08); (2) records from Dr. Medha Prahan of Southern Pain Control Center regarding his treatment of plaintiff on January 3, 2003 and February 18, 2003 (R. 609-17); (3) treatment records from Dr. David Herrick of the Center for Pain of Montgomery on June 10, 2003 (R. 618-26); and (4) treatment records from Dr. Timothy Holt for the period from October 2, 2003 to November 7, 2003 (R. 631-36).

The plaintiff argues that "[t]he Appeals Council stated that this new evidence was

dated after the ALJ's decision so it was not considered." (Plaintiff's brief, p. 9). Plaintiff misstates the Appeals Council's decision. The decision clearly indicates that the Appeals Council considered the new evidence, but determined that it "does not provide a basis for changing the Administrative Law Judge's decision" because "[the] new information does not affect the decision about whether [plaintiff was] disabled beginning on or before September 11, 2002." (R. 7-8).

The record before the ALJ includes medical treatment records from Dr. Burton for the period from May 1998 until December 1999. (R. 187-202; 455-59). The billing records submitted by plaintiff pertain to a portion of this same period of time and – to the extent they reveal treatment during this time – are cumulative of the actual treatment records already before the ALJ.

The new treatment records submitted by the plaintiff date from four to fourteen months after the ALJ's decision. The records of Dr. Pradhan (January/February 2003) and Dr. Herrick (June 2003) indicate that plaintiff then had a bulging disc at L5-S1 and stenosis at that location as well as at L4-5. However, these records do not discuss plaintiff's condition during the period for which benefits were denied. See 20 C.F.R. § 404.970(b); Otto v. Commissioner of Social Security, 2006 WL 700934, *3 (11th Cir. 2006)(unpublished)(test results immaterial where they were from a different time period and contained no discussion of what plaintiff's condition might have been as of the date of the determination); Blake v. Massanari, 2001 WL 530697, *9 (S.D.Ala. 2001)("[I]n order to be material, the new evidence must 'contai[n] a medical opinion on the presence of the

impairment during the time period for which benefits are sought.'"); Sullivan v. Apfel, 2000 WL 1568330, *8 (S.D. Ala. 2000)(unpublished)("An implicit materiality requirement is that the new evidence relate to the time period for which benefits were denied, and that it not concern evidence of a later-acquired disability or of the subsequent deterioration of the previously non-disabling condition.").

The ALJ found that plaintiff suffered from the severe impairment of "lumbalgia." The record before the ALJ included a January 2000 myelogram which showed minimal degenerative changes at L5-S1, but no evidence of herniation and "no significant abnormality" in plaintiff's lumbar/sacral spine. (R. 209). An October 2001 X-ray of plaintiff's lumbar sacral spine showed "minimal degenerative changes at L5-S1" but "normal alignment and configuration of the vertebral bodies" and "well preserved" disc spaces. (R. 376). Dr. Herrick, who treated plaintiff for a chief complaint of "low back pain" nine months after the ALJ's decision indicated that plaintiff's "pain has been present for several months." (R. 622). Degenerative disc disease is, by definition, progressive. There is no indication in the treatment notes of Dr. Herrick or Dr. Pradhan that they were then treating plaintiff for a condition *as it existed prior to September 11, 2002*, rather than for "the subsequent deterioration of the previously non-disabling condition." See Sullivan, *supra*. The medical records from Dr. Holt (Exhibit AC-5, R. 631-36) relate to his treatment of plaintiff for superficial wound dehiscence between October 2 and November 7, 2003, more than a year after the ALJ's decision.

The medical records submitted by plaintiff to the Appeals Council do not meet the

materiality standard. There is no reasonable probability that this evidence would change the administrative result. Accordingly, the Appeals Council committed no error when it denied review.

## CONCLUSION

Upon review of the record as a whole, the court concludes that the decision of the Commissioner is supported by substantial evidence and is due to be affirmed. A separate judgment will be entered.

Done, this 31st day of July, 2006.

/s/ Susan Russ Walker
SUSAN RUSS WALKER
UNITED STATES MAGISTRATE JUDGE